# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| BRITTANY MINER, on behalf of herself and all others similarly situated, | ) Case No. 1:21-cv-00694 ) ) ) Judge J. Philip Calabrese ) |
| Plaintiff, | ) Magistrate Judge ) Jonathan D. Greenberg |
| v. | ) ) |
| NEWMAN TECHNOLOGY, INC., | ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Brittany Miner brings this suit as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and as a class action under Rule 23. She moves for conditional class certification under the Act. (ECF No. 12.) Defendant Newman Technology, Inc. opposes the motion. (ECF No. 14), and the parties have fully briefed the matter. For the reasons explained below, the Court **DENIES** Plaintiff's motion for conditional certification.

## STATEMENT OF FACTS

Defendant Newman Technology, Inc. is a manufacturer of automotive exhaust systems, frames, and trim products with operations in Mansfield, Ohio, South Carolina, and Mexico. (ECF No. 1, ¶ 13, PageID #3.) Newman Technology employs 687 individuals at its Mansfield, Ohio plant, 632 of whom are hourly, non-exempt employees. (ECF No. 14-1, ¶ 5, PageID #5.) Plaintiff Brittany Miner worked as a

press operator in Newman Technology's Mansfield facility from approximately October 2013 to December 2020. (ECF No. 1, ¶ 14, PageID #3.)

### A. Alleged Violations of the Fair Labor Standards Act

Plaintiff alleges Defendant violated the Fair Labor Standards Act in several ways. First, Plaintiff claims she and other similarly situated employees were not paid for the time during which they were required to don "protective sleeves, special gloves, boots, safety glasses, and required shirts and pant uniforms." (*Id.*, ¶ 20.) She maintains that the time it took to don these items was an "integral and indispensable part of their principal activities." (*Id.*)

Second, Plaintiff claims that after employees donned their personal protective equipment, they were required to walk to the production floor. (*Id.*, ¶ 22.) Plaintiff claims she and other similarly situated employees were not paid for this "postdonning walk time." (*Id.*)

Third, Plaintiff claims that, at the end of their shifts, she and other similarly situated employee had to walk from the production floor to a changing area to remove their personal protective equipment. (*Id.*, ¶ 24.) Plaintiff claims she was not paid for this "predoffing walk time." (*Id.*)

Fourth, Plaintiff claims she and similarly situated employees were not paid for the time spent doffing their personal protective equipment at the end of their shifts, which was "an integral and indispensable part" of their principal duties. (*Id.*, ¶ 27.)

Finally, Plaintiff claims she "worked fully or in part through her uncompensated lunch period" and that she and similarly situated employees "performed work for Defendant before their regularly scheduled shift time began."

2

(*Id.*, ¶ 29.) Based on these allegations, Plaintiff claims Defendant violated the Fair Labor Standards Act (Count One) and Ohio's overtime compensation statute (Count Two).

### B. Collective Action Allegations

Plaintiff brings these claims on behalf of herself and other similarly situated employees of Defendant. Following certification, Plaintiff requests that the Court implement notice and opt-in procedures. (ECF No. 12, PageID #84–85.) Plaintiff estimates the class consists of at least 100 employees. (ECF No. 1, ¶ 32, PageID #5.)

#### B.1. Definition for the Collective Action

The complaint seeks conditional certification of the following class: "All former and current manufacturing employees of Newman Technology, Inc.'s Ohio facility between March 29, 2018 and the present." (ECF No. 1, ¶ 31, PageID #5.) Plaintiff asserts that the defined class is similarly situated to her because they "were employed by Defendant as manufacturing employees." (*Id.*, ¶ 15.) Plaintiff further asserts those similarly situated employees were also not paid overtime compensation at a rate of time and a half of their regular rate of pay when they worked more than 40 hours each workweek. (*Id.*, ¶ 17.)

#### B.2. Plaintiff's Evidence

Plaintiff submitted her own declaration with her motion for conditional certification as well as the declarations of three other employees. Plaintiff declares that she was a "non-exempt manufacturing employee" and that she was not paid for work performed outside her scheduled shift start and stop times, including changing into and out of personal protective equipment, getting tools and equipment, walking

to her assigned area of the manufacturing floor, and performing her manufacturing work. (ECF No. 12-2, ¶¶ 1 & 4, PageID #88–89.) Further, Plaintiff declares she "regularly worked through my 30-minute lunch period, which was automatically deducted from my pay." (*Id.*, ¶ 5, PageID #89.)

The declarations of the other three employees, Charles Strong, a machine operator (ECF No. 12-3); Linda Luna, a production associate (ECF No. 12-4); and William DeNigro, an employee in the shipping department (ECF No. 15-1) are virtually identical. They mirror Plaintiff's declaration in that they claim Defendant required them to do unpaid work, including changing into and out of their PPE, walking to their assigned areas of the manufacturing floor, and performing manufacturing work. (ECF No. 12-3, ¶ 3, PageID #91; ECF No. 12-4, ¶ 3, PageID #92; ECF No. 15-1, ¶ 3, PageID #184.)

### B.3. Defendant's Evidence

Defendant submitted several declarations in connection with its opposition to conditional certification. (ECF No. 14-1 & 14-2.) Lisa Shaffer, the senior manager of human resources for Defendant, declares that, at the start of each shift, a bell rings at which time employees must present for a daily "line meeting." (ECF No. 14-1, ¶ 7, PageID #117.) By the time the line meeting starts, employees have already clocked-in and are being compensated. (*Id.*) Roughly 20 minutes before the end of each shift, another bell rings to signal the start of cleanup tasks. (*Id.*, ¶ 9.) Further, Ms. Shaffer swears that "employees are to utilize those final 20 minutes of their shift to conclude any ongoing production, clean and store tools and equipment, and tidy their workstations." (*Id.*) Defendant also permits employees to clock out up to five minutes

4

before the end of their shifts, even though they are paid for the entirety of their shift. (*Id.*, ¶ 10.)

Ms. Shaffer declares that employees are given a 30-minute unpaid meal period during each shift. (*Id.*, ¶ 11.) At the conclusion of the meal period, a bell rings to alert employees that they have three minutes to return to their respective workstations. (*Id.*, ¶ 13, PageID #118.) Three minutes later, another bell rings to begin production. (*Id.*) Employees are paid for the three minutes between the conclusion of the 30-minute meal period and the restart of production. (*Id.*)

According to Ms. Shaffer, as a safety precaution, Defendant requires employees to wear steel-toed shoes and safety glasses while on the production floor. (*Id.*, ¶ 16.) While this is the only personal protective equipment required on the production floor, Defendant "does provide additional PPE that employees may choose to wear during their shift such as ear protection, gloves, and protective sleeves." (*Id.*, ¶ 18, PageID #118-19.) This PPE is made available around the employees' workstations and may be retrieved after the line meeting. (*Id.*, ¶ 19.)

Defendants' remaining declarations come from 25 employees. Each is virtually identical. The employees have the job title of production associate and declare the following: they are allowed to change into their uniforms at home or wear them to work; they wear safety glasses and steel-toed boots during production; at the start of their shifts, a bell rings at which time they must be present for the line meeting; they are not required to get their gloves, ear protection, or additional PPE until after the line meeting; they do not perform work during their 30-minute meal period; they may

5

clock out and leave up to five minutes prior to the end of their shifts, although they are paid for the entire shift; Defendant does not require them to work prior to or after their shift; and they are compensated for overtime when they exceed 40 hours in a workweek. (*See, e.g.*, ECF No. 14-2, ¶ 5, PageID #120–21 & 122–23.)

## STATEMENT OF THE CASE

Defendant principally opposes Plaintiff's motion for conditional certification for three reasons. First, Defendant argues that Plaintiff provided insufficient evidence in support of her motion because she offered only "vague, generic declarations devoid of any foundation" for the allegations. (ECF No. 14, PageID #107.) Second, Defendant claims Plaintiff's proposed class is overbroad and that Plaintiff's claims are unique to her and, therefore, improper for treatment as a collective action. (*Id.*, PageID 109.) Finally, Defendant argues that Plaintiff's motion is premature and asks the Court either to allow the parties to conduct limited discovery or hold a hearing on the proposed class and the contents of the notice. (*Id.*, PageID #111–12.)

## LEGAL STANDARD

"The Fair Labor Standards Act requires employers to pay overtime to most employees who work more than 40 hours a week." *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (citing 29 U.S.C. § 207(a)(1)). When employers do not comply with its requirements, the Act authorizes collective actions "by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Where a court certifies a collective

6

action, other employees who seek to join the collective class must opt into the litigation by filing a written consent with the court. *Id.*

Before a collective class may be certified, the lead plaintiffs must show "that the proposed class members are similarly situated" to them. *Fortney v. Walmart, Inc.*, No. 2:19-cv-4209, 2021 WL 221996, at *2 (S.D. Ohio Jan. 22, 2021) (quoting *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 WL 2389721, at *2 (S.D. Ohio May 25, 2018)). Whether the plaintiff has identified similarly situated class members is determined in two phases that are governed by two different standards. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). First is conditional certification, which is conducted at the start of discovery. *Id.* Second is final certification, which is conducted after discovery concludes. *Id.* If conditional certification is granted, defendants may move for decertification after discovery. *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated in part on other grounds*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160, 165–66 (2016).

This lawsuit is in the early stages, and Plaintiff seeks conditional certification. The purpose of conditional certification is "to provide notice and opportunity to opt in" to the lawsuit. *Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006). At the conditional phase, the plaintiff need only make "a modest factual showing" that "his position is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546–47. Conditional certification does not permit the Court to examine the merits of the case. *Barker v. Stark Cnty.*,

No. 5:19CV276, 2020 WL 1288807, at *2 (N.D. Ohio Mar. 18, 2020) (citing *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 826 (N.D. Ohio 2011)). In contrast to final certification, the standard for conditional certification is "fairly lenient . . . and typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547.

Although the Sixth Circuit has not spoken on the issue, most district courts within this Circuit "have held that plaintiff's evidence on a motion for conditional certification need not meet the same evidentiary standards applicable to motions for summary judgment because to require more at this stage of litigation would defeat the purpose of the two-stage analysis under Section 216(b)." *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 770 n.6 (N.D. Ohio 2015) (cleaned up). This is because "[a] conditional certification action occurs at the outset of discovery, not at the close of discovery, and therefore the admissible evidence standard for summary judgment motions should not apply." *Id.* at 247 (citations omitted). Accordingly, evidence that others are similarly situated to the lead plaintiff need not be admissible at this preliminary phase. *Jesiek v. Fire Pros, Inc.*, 275 F.R.D. 242, 246 (W.D. Mich. 2011) (considering potential hearsay in the plaintiffs' declarations on conditional certification).

Finally, the Court must "refrain from weighing Defendants' competing evidence at this juncture" where doing so "would require credibility and factual determinations improper at the conditional certification stage." *Hamm v. Southern Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 876 & 878 (S.D. Ohio 2017) (citations omitted);

8

*see also Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2008 WL 5725631, at *4 (N.D. Ohio June 9, 2008) ("Generally, courts have left assessment of disparate factual and employment settings of individual class members to the second stage of the analysis.").

## ANALYSIS

Plaintiff's request for conditional certification depends on whether there is sufficient evidence, at this preliminary stage, that she is similarly situated to other employees. The "similarly situated" inquiry under the Fair Labor Standards Act is less stringent than the class certification requirements under Rule 23. *O'Brien*, 575 F.3d at 584–85. The Act does not define "similarly situated," but the Sixth Circuit has provided some guidance on what the term means. It holds "plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585. In addition, employees may be similarly situated if their claims are "unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Id.*

### I. Donning & Doffing

Plaintiff's claims that she and other similarly situated employees were not paid for the time during which they were required to don "protective sleeves, special gloves, boots, safety glasses, and required shirts and pant uniforms." (ECF No. 1, ¶ 19, PageID #4.) Plaintiff also claims she was not compensated for time spent doffing the required PPE. (*Id.*, ¶ 27, PageID #5.) In addition to Ms. Miner's declaration,

9

Plaintiff submitted the declarations of three other manufacturing employees, a machine operator (ECF No. 12-3), a production associate (ECF No. 12-4), and a shipping employee (ECF No. 15-1). These declarations state that employees were not compensated for "changing into and out of my personal protective equipment such as a shirt, pants, steel toe boots, earplugs, safety glasses, gloves and/or sleeve guards." (ECF No. 12-3, ¶ 3, PageID #91; ECF No. 12-4, ¶ 3, PageID #92; ECF No. 15-1, ¶ 3, PageID #184.) Plaintiff's complaint states that donning protective equipment was "an integral and indispensable part" of employees' principal activities. (ECF No. 1, ¶ 20, PageID #4.) Otherwise, neither Plaintiff nor the declarants describe their job duties or explain how donning and doffing their protective equipment is integral and indispensable to their jobs.

Employers need not compensate employees for activities that are preliminary or postliminary to the employee's principal activities. *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 32 (2014) (citing 29 U.S.C. § 254(a).) The Supreme Court "has consistently interpreted the term 'principal activity or activities' to embrace all activities which are an integral and indispensable part of the principal activities." *Id.* at 33 (cleaned up). "[A]n activity is integral and indispensable to the principal activities that an employee is employed to perform . . . if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Id.* at 37. The determination does not depend on whether an employer required a particular preliminary or postliminary activity. *Id.* at 36.

Rather, the inquiry focuses on "the productive work the employee is employed to perform." *Id.*

### I.A.

Defendant argues that Plaintiff offers only "vague, generic declarations" and "conclusory allegations" to support conditional certification and that her declarants fail to "identify, with any real specificity, the scope of their respective job duties or how their purported preliminary activities are integral and indispensable to those job duties" such that they give rise to liability under the Fair Labor Standards Act. (ECF No. 14, PageID #108.) For this argument, Defendant relies on *Duncan-Watts v. Nestle USA, Inc.*, No. 1:19 CV 01437, 2020 WL 589041 (N.D. Ohio Feb. 5, 2020), and the Court's ruling in *Pippen v. Global Technical Recruiters, Inc.*, No. 1:21 CV 00311, 2021 WL 2430707 (N.D. Ohio June 15, 2021).

In *Duncan-Watts*, the court declined to grant conditional certification where the plaintiff and potential opt-in plaintiffs who worked in a food-packing plant failed to "describe what they do in the course of their employment with defendants." *Duncan-Watts*, 2020 WL 589041, at *3. The Court reasoned that merely alleging employees had to don and doff protective sanitary equipment was not sufficient to establish a common theory of liability without any explanation regarding the employees' principal job duties. *Id.* at *4.

In *Pippen*, the plaintiff alleged that his employer failed to compensate him and similarly situated employees for time spent donning and doffing PPE. *Pippen*, 2021 WL 2430707, at *3. In support of his motion for conditional certification, the plaintiff submitted his own declaration as well as declarations from three other employees.

11

*Id.* at *2. In denying Pippen's motion, the Court held that "neither Plaintiff nor the declarants describe their job duties or explain how donning and doffing protective equipment is integral and indispensable to their job duties." *Id.* at *6.

### I.B.

As in *Duncan-Watts* and *Pippen*, Plaintiff and the declarants supporting her motion provide their job titles and declare they are required to wear PPE; however, they do not provide evidence that would permit the Court to determine whether they are similarly situated to one another and whether the required donning and doffing is integral and indispensable to their duties. Plaintiff and the declarants state they are required to wear shirts, pants, steel toe boots, safety glasses, hard hats, masks, protective sleeves, and protective gloves. But Plaintiff has not presented evidence from which the Court can determine that the use and time associated with the PPE is similar for each job at Newman Technology.

Based on the record before the Court, any donning and doffing violations likely vary based on job title and duties. A variation in job duties or titles among potential opt-in plaintiffs is often not relevant in determining if a proposed class is similarly situated in the face of single policy that violates the Act. *See Arocho v. Crystal Clear Bldg. Services, Inc.*, No. 1:12-cv-2186, 2013 WL 1855978, at *2 (N.D. Ohio 2013) (discussing *O'Brien*, 575 F.3d at 585). In this case, however, the record does not support that the single policy Plaintiff claims—taking her facts and allegations as true—has similar effects on potential opt-in class members. For example, the record provides insufficient information from which to determine if such a policy resulted in similar violations across various jobs. Indeed, the declarations from the three

potential opt-in plaintiffs provide no description of their job duties or responsibilities. *See Duncan-Watts*, 2020 WL 589041, at *4. Accordingly, the Court declines to grant conditional certification for the donning and doffing class.

## II. Other Uncompensated Work

Plaintiff also argues that she and similarly situated employees were not compensated for other work performed either before or after their shifts began. (ECF No. 1, ¶ 29, PageID #5.) For example, Plaintiff claims she was not compensated for time spent working during her 30-minute meal break. In support of this claim, Plaintiff declares, "I also regularly worked through my 30-minute lunch period, which was automatically deducted from my pay." (ECF No. 12-2, ¶ 5, PageID #89.) With respect to work during meal periods, Mr. Strong, Ms. Luna, and Mr. DeNigro, the other three hourly employees whose declarations support Plaintiff's motion, do not claim that they were required to work during uncompensated meal breaks. In this regard, this claim appears to be unique to Plaintiff.

More broadly, all three declarations Plaintiff submitted say that Defendant required employees to work outside of scheduled start and stop times, including overtime hours worked, and that the declarants "observed that Newman did this to other manufacturing employees, and I believe I am similarly-situated to these employees." (ECF No. 12-2, ¶¶ 8-9, PageID #89; ECF No. 12-3, ¶¶ 5-6, PageID #91; ECF No. 12-4, ¶¶ 5-6, PageID #92.) Defendants dispute these claims.

Without making a merits determination or weighing credibility of the evidence, the Court finds that Plaintiff's claims and the claims of the other hourly employees requires an individualized analysis to determine whether a particular FLSA violation

13

took place. Further, Plaintiff has not shown that she and other hourly employees "suffer from a single, FLSA-violating policy" with respect to the alleged unpaid work employees performed. *O'Brien*, 575 F.3d at 585. At this stage, Plaintiff's only proof of such a policy is the nearly identical declarations of two other employees with different job titles stating that "as a result of Newman Technology's practices and policies, I was not compensated for all of the time I worked, including all of the overtime hours I worked over 40 each workweek." (ECF No. 12-3, ¶ 5, PageID #91; ECF No. 12-4, ¶ 5, PageID #92.) These conclusory statements are not sufficient evidence of a company-wide policy of requiring employees to perform unpaid work. Plaintiff has not carried her burden, light though it may be, of establishing that the plaintiffs are similarly situated.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's request for conditional certification. (ECF No. 12.)

**SO ORDERED.**

Dated: August 18, 2021

	J. Philip Calabrese
	United States District Judge
	Northern District of Ohio

14